[ECF No. 39]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **CHRISTOPHER TYSKA,**<br><br>**Plaintiff,**<br><br>v.<br><br>**ZIMMER BIOMET HOLDINGS, INC.; ZIMMER INC.; MICHAEL JASPAN; ABC CORPORATIONS 1-5; JOHN DOES 1-5,**<br><br>**Defendants.** | Civil No. 24-817 (RMB/EAP) |

## MEMORANDUM ORDER

This matter comes before the Court on Plaintiff Christopher Tyska's ("Plaintiff") Motion to Quash. ECF No. 39 ("Pl.'s Mot."). Defendants Zimmer Biomet Holdings, Inc., Zimmer, Inc. and Michael Jaspan (collectively "Defendants") have opposed the motion. ECF No. 40 ("Defs.' Opp'n"). Plaintiff filed a reply in support of his motion. ECF No. 41 ("Pl.'s Reply"). The Court has reviewed the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the following reasons, the motion is **GRANTED**.

**Factual Background**

A.      **Facts According to the Complaint**

1.      Plaintiff filed this employment action asserting claims of retaliation and wrongful discharge by Defendants Zimmer Biomet Holdings, Inc., Zimmer, Inc. (collectively "Corporate Defendants") and Michael Jaspan ("Jaspan"). *See generally* ECF No. 1-1 ("Complaint").

2.      According to the Complaint, the Corporate Defendants develop and market orthopedic reconstructive equipment, including but not limited to, hip and knee implants. *Id.* ¶ 12.

Sales representatives order the necessary medical equipment their customers require, and the Corporate Defendants deliver the equipment to the hospital. *Id.* ¶ 17. Following delivery, sales representatives inspect the equipment for damage and other potential compromises to ensure proper integrity. *See id.*

3. According to the Complaint, the Corporate Defendants employed Plaintiff as a medical device sales representative for over fifteen years. *Id.* ¶ 15. During his employment, Plaintiff allegedly became one of Corporate Defendants' top sales representatives and maintained a favorable reputation within the industry. *Id.* ¶ 18. At all relevant times, Defendant Jaspan served as Plaintiff's direct supervisor. *Id.* ¶ 20.

4. On March 17, 2023, Plaintiff allegedly discovered "compromised implants in the hospital supply room." *Id.* ¶ 21. Specifically, he noted that the implant tools were "damaged and dirty," the implant boxes were open, the primary and secondary seals to ensure sterilization were broken or damaged, and the implants were "often mislabeled, damaged, and had missing parts." *Id.* ¶¶ 21-23. Plaintiff made similar discoveries on March 31 and April 7, 2023. *Id.* ¶¶ 37, 41. According to the Complaint, such compromised implants violated U.S. Food and Drug Administration ("FDA") regulations. *Id.* ¶¶ 26-31. Plaintiff reported these discoveries to the Corporate Defendants' management in accordance with the FDA's Medical Device Reporting regulation. *Id.* ¶¶ 31-42. Plaintiff asserts that Defendants failed to address his numerous reports and complaints. *Id.* ¶¶ 35, 38, 40, 42.

5. On April 17, 2023, Plaintiff allegedly discovered that Defendants failed to supply the implant for a hip surgery scheduled to take place that morning. *Id.* ¶ 44. At the end of that morning's surgeries, Plaintiff spoke with Logistics/Warehouse Manager Jeff Sippel regarding ongoing patient safety issues, and "Mr. Sippel informed Plaintiff that management was blatantly ignoring Plaintiff's complaints." *Id.* ¶¶ 33, 47. In an effort to "ma[k]e his objections even more clear," Plaintiff put all

of his orders on hold, deducing that patients were better off waiting as opposed to undergoing procedures with compromised equipment. *Id.* ¶¶ 49-50. However, the Corporate Defendants removed Plaintiff's hold, and all operations resumed, including continued delivery of compromised equipment. *Id.* ¶¶ 51, 53.

6. Between April 17, 2023, and May 8, 2023, Plaintiff informed the Corporate Defendants that if they failed to address and correct Plaintiff's concerns, he would report the matter to the federal government. *Id.* ¶ 54. According to the Complaint, Defendants ignored Plaintiff's ultimatum. *Id.* ¶ 55. Defendants then retaliatorily accused Plaintiff of committing "'egregious actions'" and "banned [Plaintiff] from [the] Corporate Defendants, effectively terminating his employment." *Id.* ¶ 56.

7. Plaintiff alleges that Defendant Jaspan—"[c]oncerned about revenue and profits"—then tried to rehire Plaintiff. *Id.* ¶¶ 58-59. Following an unsuccessful phone call with Plaintiff, Jaspan then "set out on a destructive, retaliatory campaign designed to 'blackball' Plaintiff from the industry entirely." *Id.* ¶¶ 61-68.

**B.   Procedural History Relevant to the Current Dispute**

8. On February 12, 2024, Plaintiff filed this action in the New Jersey Superior Court against Defendants for retaliation in violation of New Jersey Conscientious Employee Protection Act ("CEPA") (Count One), *id.* ¶¶ 76-99, and wrongful discharge in violation of public policy (Count Two), *id.* ¶¶ 100-03.

9. On February 12, 2024, Defendants removed the matter to this Court on grounds of diversity jurisdiction under 28 U.S.C. § 1332. *See* ECF No. 1 (Notice of Removal).

10. Plaintiff's discovery responses disclosed that on September 6, 2024, Plaintiff commenced employment with 360Joints as a Consultant earning 100% commission. *See* ECF No. 40-6, Ex. A (Pl.'s Resp. Interrog. No. 10). During the continuation of Plaintiff's deposition on

3

December 11, 2024, Defendants' counsel asked Plaintiff about his role with 360Joints. ECF No. 40-7, Ex. G (Pl.'s Dep). Based on that testimony, "Defendants understood that, as of August 2024, Plaintiff was not working, but that, as of September 6, 2024, he was working full-time for 360Joints, and that he was in training that was supposed to last for several more months after December 2024." Defs.' Opp'n at 7. Defendants contend, however, that two subsequent third-party depositions offered conflicting testimony regarding Plaintiff's role at 360Joints, calling into question when he started working there and how much he was working. *Id.* at 7-10.

11. On April 25, 2025, Defendants notified Plaintiff of their intent to subpoena the president of Plaintiff's new employer, 360Joints. *See* ECF No. 40-10, Ex. J (Apr. 25, 2025 Email). The parties participated in a meet-and-confer to discuss the subpoena and the alleged inconsistencies, ECF No. 40-11, Ex. K (Decl. of Brian R. Ellixson) ¶ 2. In response, Plaintiff made a supplemental production of documents on the issue. ECF Nos. 40-12, Ex. L (Feb. 27, 2025 Email); 40-13, Ex. M (Mar. 11, 2025 Email).

12. Because the parties could not reach a resolution of the issue, the Court directed Defendants to serve the subpoena. *See* ECF No. 36 (Am. Scheduling Order) ¶ 1. The current subpoena seeks the testimony of 360Joints' president, Misael Ramirez, as well as disclosure of numerous documents from Plaintiff's personnel file, including agreements between Plaintiff and 360Joints, the date Plaintiff's employment with 360Joints began, a description of Plaintiff's duties, and documents reflecting Plaintiff's performance, any type of leave, any type of compensation, and a termination date. *See* Pl.'s Mot. at 10; ECF No. 39-4, Ex. A (Subpoena *Duces Tecum*).

13. On June 2, 2025, Plaintiff filed a motion to quash the subpoena due to potential chilling effects, privacy concerns, and the existence of less intrusive alternatives. *See generally* Pl.'s Mot.

4

14. Defendants oppose the motion and claim that the subpoena is necessary due to discrepancies and inconsistencies in Plaintiff's testimony and interrogatory responses, including whether Plaintiff started with 360Joints in April 2024 or September 2024, whether there was a March 2024 employment agreement, and whether Plaintiff is refusing available work because of this lawsuit. Defs.' Opp'n at 2. Defendants claim that such discrepancies are "highly relevant" to their failure to mitigate defense. *Id.* at 1.

Having been fully briefed, this matter is now ripe for disposition.

**Legal Standard**

15. Discovery rules under the Federal Rules of Civil Procedure are inherently broad. Under Federal Rule of Civil Procedure 26, however, courts may limit excessive means of discovery, particularly in cases where those means are "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(c)(1). In such cases, courts may limit discovery at their discretion or on motion. Fed. R. Civ. P. 26(c).

16. Federal Rule of Civil Procedure 45 permits litigating parties to order production of materials within nonparties' "possession, custody, or control" via a subpoena. Fed. R. Civ. P. 45(a)(1)(A)(iii). Subpoenas are a form of nonparty discovery and must conform to the permissible scope of discovery detailed in Rule 26. When a subpoena is outside the scope of permissible discovery, Rule 45 permits litigating parties and nonparties subjected to the subpoena, to file a motion to quash the subpoena. Fed. R. Civ. P. 45(d)(3).

17. Federal Rule of Civil Procedure 45(d)(3)(A) provides for when a court must quash a subpoena.

> On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>   (i) fails to allow a reasonable time to comply;

>    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>    (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A)(i-iv).

18.     "'The party seeking to quash the subpoena bears the burden of demonstrating that the requirements of Rule 45 are satisfied.'" *Strike 3 Holdings, LLC v. Doe,* No. 18-16593, 2019 WL 4745360, at *3 (D.N.J. Sept. 30, 2019) (quoting *Malibu Media, LLC v. John Does 1-15*, No. 12-2077, 2012 WL 3089383, at *5 (E.D. Pa. July 30, 2012) (further citations omitted)). The movant must also show that the subpoena is "unreasonable and oppressive." *Burgess v. Galloway*, No. 20-6744, 2021 WL 2661290, at *3 (D.N.J. Jan. 28, 2021) (quotation omitted). Courts describe this burden as "heavy." *Strike 3 Holdings*, 2019 WL 4745360, at *3. Once the movant meets this heavy burden, a court must balance the subpoenaing party's interest in disclosure against the subpoenaed party's interest in non-disclosure to determine whether the burden on the nonparty is undue. *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014). In determining whether to grant a motion to quash a subpoena, courts consider:

> 1) relevance, 2) the need of the party for the documents, 3) the breadth of the document request, 4) the time period covered by it, 5) the particularity with which the documents are described, 6) the burden imposed, and 7) the subpoena recipient's status as a nonparty to the litigation.

*In re Novo Nordisk Secs. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. Mar. 30, 2021) (quoting *Biotechnology Value Fund, L.P. v. Celera Corp.*, No. 14-4046, 2014 WL 4272732, at *2 (D.N.J. Aug. 28, 2014)).

19.     "While, generally, only the subpoenaed third party has standing to challenge a subpoena, a party to the litigation may move to quash when he or she has a personal right or privilege

with respect to information sought by the subpoena." *Ramos v. Walmart*, No. 21-13827, 2023 WL 2327208, at *3 (D.N.J. Mar. 2, 2023) (citing *Schmulovich v. 1161 Rt. 9 LLC*, No. 07-597, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007)). A plaintiff suing an employer for employment discrimination can assert a sufficient privacy interest in the information contained in his third-party employment records to confer standing to bring a motion to quash these subpoenas. *See, e.g., Ramos*, 2023 WL 2327208, at *3 (finding that a plaintiff's privacy interest in his/her employment records is sufficient to establish standing under Rule 45 to support a motion to quash the subpoenas for the records' production); *Hashem v. Hunterdon Cnty.*, No 15-8585, 2017 WL 2215122, at *2 (D.N.J. May 18, 2017) (noting that a party has standing to bring a motion to quash a third-party subpoena seeking his employment and educational records given the personal nature of the content of such records).

**Analysis**

20. Plaintiff moves to quash Defendants' subpoena issued to his current employer, 360Joints, arguing that the subpoena is "harassing, damages Plaintiff's reputation with his current employer, and runs afoul of Plaintiff's privacy interests." Pl.'s Mot. at 1. Moreover, Plaintiff asserts that Defendants can obtain the sought-after discovery directly from him. *Id.* Defendants respond that the subpoena is necessary because (1) the subpoena seeks information relevant to Plaintiff's mitigation efforts; (2) Plaintiff has not established "good cause" for a protective order; (3) the relevance of the information sought outweighs any harm to Plaintiff; and (4) the subpoena is a "last resort" to gather information for which there are no other less intrusive alternatives. *See generally* Defs.' Opp'n. Upon review of the parties' briefing, the Court finds that Plaintiff has set forth good cause to quash the subpoena under Fed. R. Civ. P. 45(d)(3)(A).

21. Primarily, Plaintiff has established that the subpoena is unreasonable and oppressive. Plaintiff's "good cause" rests in his "legitimate privacy interest in information regarding [his]

7

subsequent employment." [1] *EEOC v. Princeton Healthcare Sys.*, No. 10-4126, 2012 WL 1623870, at *21 (D.N.J. May 9, 2012). Numerous courts recognize that subpoenas to current employers may be a tool for harassment and may result in employment difficulties. *See Kimes v. Univ. of Scranton*, No. 14-91, 2015 WL 778376, at *3 (M.D. Pa. Feb. 24, 2015) ("[T]he Court is cognizant of the potential burden this discovery could have on Plaintiff's relationship with her current employer . . . ."); *Tinio v. St Joseph's Reg'l Med. Ctr.*, No. 13-829, 2014 WL 3345134, at *2 (D.N.J. July 7, 2014) ("[C]ourts have noted that a plaintiff may have a legitimate concern that a subpoena sent to a current employer may result in difficulties in a new job." (citing *Princeton Healthcare*, 2012 WL 1623870, at *24)). As such, courts often reject subpoenas targeted at current employers to limit these negative implications and to preserve plaintiffs' privacy interests.[2] *See, e.g., Tinio*, 2014 WL 3345134, at *2 (noting that a plaintiff may have a legitimate concern that a subpoena sent to a current employer under the guise of a discovery request could be a tool for harassment and result in difficulty in her new job (quotation omitted)); *Zeller v. S. Cent. Emergency Med. Servs., Inc.*, No. 13-2584, 2014 WL

---

[1] Defendants rely on *Berridge v. Nalco Co.*, No. 10-3219, 2011 WL 13235049 (D.N.J. Aug. 19, 2011), to argue that Plaintiff has failed to identify particular harms from the subpoena. The Court, however, finds *Berridge* sufficiently distinguishable. In *Berridge*, the court denied a protective order in part because plaintiff failed to show how a general subpoena to his current employer seeking Plaintiff's employment records would result in any particularized or significant harm. *Id.* at *3. Here, however, Plaintiff adequately establishes that the subpoena at issue seeks documents and sworn testimony from the President of 360Joints, thus "entangling [him] in this dispute, burdening him with a deposition, and interfering with business operations[, which] will no doubt discontent and aggravation." Pl.'s Reply Br. at 1; *see also Ramos*, 2023 WL 2327208, at *7 n.5 (noting that "although no concrete or identifiable harm to Plaintiffs resulting from the Employer Subpoenas has been presented on this motion, the Court approaches third-party discovery directed at employers that are not the focus of an employment discrimination claim with a measured level of caution, given the risk that such discovery could be used for an improper purpose, including the harassment or intimidation of a plaintiff attempting to enforce his or her rights under Title VII or a similar protective statute." (citing cases)).

[2] Defendants attempt to undercut the subpoena's disruptive risks by highlighting that 360Joints already knows about Plaintiff's lawsuit. Defs.' Opp'n at 2-3. That argument, however, fails to account for the impact caused by a subpoena for documents and testimony served direclty on the president of the company.

2094340, at *3-4 (M.D. Pa. May 20, 2014) (recognizing the "direct negative effect" of subpoenas to employers not involved in the employment discrimination action).

22. Moreover, Plaintiff has shown that the information Defendants seek is available through less intrusive means. *See Kimes*, 2015 WL 778376, at *4 (recognizing that although the requested discovery from plaintiff's current employer was potentially relevant to damages and mitigation, it was discoverable through "lesser intrusive means" (quoting *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 255 (S.D. Ind. Mar. 18, 2002))). Here, Defendants seek to test the veracity of Plaintiff's testimony and his discovery responses but they could achieve that goal through less intrusive discovery tools, such as Plaintiff's deposition, interrogatories, and document requests. *See Hu v. Merck Sharp & Dohme LLC*, No. 23-754, 2023 WL 5598450, at *3 (E.D. Pa. Aug. 29, 2023) ("To the extent [the employer] seeks to test the veracity of [plaintiff's] claims or the completeness of his discovery responses, [the employer] may do so through the less intrusive means of taking [plaintiff's] deposition under oath."). Plaintiff has affirmatively agreed to sit for another day of deposition to address the alleged inconsistencies, *see* Pl.'s Mot. at 11, thus confirming the existence of lesser intrusive alternatives. *See Creel v. Armstrong Cnty.*, No. 15-601, 2016 U.S. Dist. LEXIS 45334, at *3 (W.D. Pa. Apr. 4, 2016) ("Plaintiff . . . expresses a willingness to cooperate with [d]efendants, noting that [d]efendants can obtain the information sought without subpoenaing [her] employer.").

23. Because Plaintiff has met his "heavy burden," the Court now balances Defendants' interests in disclosure against Plaintiff's interests in nondisclosure.

24. First, although Defendants' subpoena seeks information which is relevant to Plaintiff's mitigation efforts, Defendants must first attempt to obtain clarity from Plaintiff before issuing a subpoena to his new employer. *See Tinio*, 2014 WL 3345134, at *2 (explaining that parties should only subpoena current employers as a last resort); *Zeller*, 2014 WL 2094340, at *6 (finding

that although defendant's narrowly tailored subpoena to plaintiff's current employer sought discovery relevant to damages and mitigation, "Plaintiff should be afforded the opportunity to provide the information sought by Defendants" to avoid "the potential burden this discovery could have on Plaintiff with his current employer").

25. To date, Defendants have deposed Plaintiff and two other nonparties and have served an interrogatory concerning his current employment on Plaintiff to which he has responded and provided a supplemental answer. *See* ECF No. 40-4-40-9, Exs. D-I. Although the testimony from the nonparties was allegedly inconsistent with Plaintiff's previous testimony, mere inconsistency cannot justify Defendants' broad subpoena—which ultimately seeks the whole of Plaintiff's personnel file and the testimony of the president of his current employer—simply to test Plaintiff's veracity.[3] *See White v. The Devereux Found.*, No. 23-2060, 2024 WL 5668920, at *3 (E.D. Pa. Jan. 12, 2024) (blanket production of plaintiff's entire personnel record is impermissible based on mere claims that a defendant wants to test a plaintiff's credibility and mitigation efforts). This is especially so when Defendants have not directly asked Plaintiff to clarify the inconsistencies.

26. Second, the relevance of the information sought here does not, at this juncture, outweigh the potential harm to Plaintiff. The information Defendants seek is indeed relevant to Plaintiff's mitigation efforts, but the Court cannot overlook the possible negative implications of subjecting the President of Plaintiff's current employer to such a broad subpoena. Stated differently,

---

[3] Defendants rely on *Saller v. QVC, Inc.*, No. 15-2279, 2016 WL 8716270 (E.D. Pa. June 24, 2016) for the proposition that they are entitled to test the veracity of Plaintiff's testimony and discovery responses. The Court, however, finds *Saller* sufficiently distinguishable. There, the court denied plaintiff's motion to quash defendant's subpoena to plaintiff's current employer in part because "Defendant is entitled to serve third-party subpoenas 'to test the veracity of [the opposing party's] assertion that they have produced all documents they were required to produce.'" *Saller*, 2016 WL 8716270, at *6 (quoting *New Park Ent. LLC v. Elec. Factory Concerts, Inc.*, No. 98-775, 2000 WL 62315, at *4 (E.D. Pa. Sept. 21, 2010)). Here, however, Defendant has not attempted to seek clarity as to the alleged inconsistencies from Plaintiff first, and instead, has resorted immediately to a third-party subpoena to Plaintiff's employer.

the discovery Defendants seek—consisting of almost all of Plaintiff's employment record—is not proportional to the needs of the case. *See Hashem*, 2017 WL 2215122, at *3 ("[T]he breadth of Defendants' subpoena to Plaintiff's current employer goes far beyond what is specifically relevant to mitigation.").

27. Nonetheless, the Court remains cognizant that Defendants have identified various inconsistencies regarding Plaintiff's current employment, the resolution of which affect Defendants' mitigation defense. Plaintiff has emphasized his willingness to participate in such further discovery. *See* Pl.'s Reply at 2. As such, Defendants may re-depose Plaintiff on the alleged inconsistencies and seek any supplemental documentation related to that topic. Should the inconsistencies remain unresolved, and if Defendants can establish that certain limited discovery from 360Joints would be relevant, not duplicative, and not unduly burdensome, Defendants may seek leave from the Court to issue a new, more narrowly tailored subpoena. Therefore,

**IT IS** this **30th** day of **July 2025**,

**ORDERED** that Plaintiff's Motion to Quash, ECF No. 39, is **GRANTED**; and it is further

**ORDERED** that Defendants may re-depose Plaintiff on any of the alleged inconsistencies between his prior testimony and those of third parties regarding his employment at 360Joints. Defendants may also request additional documents related to that subject area; and it is further

**ORDERED** that, if after Plaintiff's deposition, Defendants can establish need and good cause for a limited subpoena from 360Joints, Defendants may seek leave of Court to issue a new subpoena.

                                                     s/Elizabeth A. Pascal  
                                                     ELIZABETH A. PASCAL  
                                                     United States Magistrate Judge

cc: Hon. Renée M. Bumb, U.S.D.J.